## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

JOSEPH BOND

       Plaintiff,

  vs.

BLUE WATER CAPITAL LLC

D/B/A FLEETSMARTS

         Defendant.

Case No. 1:24-cv-01612-VMC

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BLUE WATER CAPITAL LLC'S MOTION TO DISMISS

## I.   INTRODUCTION

Defendant Blue Water Capital LLC d/b/a FleetSmarts' (FleetSmarts or Defendant) motion to dismiss must be denied because the Plaintiff has pled that he received the illegal calls at issue to his residential telephone number, which is subject to the protections afforded by the National Do Not Call Registry. Those allegations, bolstered by Mr. Bond's affidavit, are to be afforded substantial credit and weight. Defendant's attempt to bootstrap a 12(b)(6) motion over a factual dispute over the purported use of the number or its eligibility of registration on the National Do Not Call Registry at such an early stage of the litigation, before any discovery directed into the Plaintiff's allegations more properly the subject of a motion for summary judgment has occurred, must be rejected.

So too must Defendant's attempt to employ a 12(b)(2) motion as a backup. Nevertheless, Defendant's contentions in its motion are often unsupported and do not warrant dismissal. As so many other courts have done in other TCPA cases where the Plaintiff has plausibly alleged that a number on the Do Not Call Registry is primarily used for residential purposes, this case should be permitted to proceed. Similarly, as the wealth of TCPA-specific case precedent makes clear, calling a telephone number FleetSmarts admits it *knew* was publicly associated with the state of Georgia demonstrates that it has assented to personal jurisdiction here. Defendant's motion should therefore be denied in its entirety.

1

## II.    LEGAL STANDARD

In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well pleaded factual allegations in the plaintiff's favour. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). However, a Rule 12(b)(2) challenge is unique in that it is not limited to the four corners of the pleading and the Court may consider additional evidence proffered by both parties, including affidavits, evidence, and judicially noticeable records. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). And although the plaintiff will ultimately bear the burden of demonstrating personal jurisdiction at trial, he need not make such a showing at the pleadings stage. *See Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1227 (S.D. Ala. 2006). Rather, the Plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. *Id.* And, when claims of jurisdiction are the subject of a good faith dispute, the court must generally permit jurisdictional discovery. *Id.*

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favourable to the plaintiff. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from

2

the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) To survive a motion to dismiss, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where the plaintiff pleads factual content that would allow a court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### III.   ARGUMENT

A.   *The Defendant admits it knew it was calling a telephone number associated with Georgia in order to conduct business in Georgia. Defendant is therefore subject to specific personal jurisdiction in Georgia.*

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). As a preliminary matter, the Plaintiff does not contest that this court lacks *general* jurisdiction over Defendant. As the Declaration of Mike Rawlins makes clear, FleetSmarts is a Utah corporation with its principal place of

business in Utah. But though FleetSmarts may not be subject to *general* personal jurisdiction in Georgia, it is unquestionably subject to *specific* personal jurisdiction in Georgia.

Generally speaking, a federal court may assert *specific* personal jurisdiction over a nonresident defendant when it commits "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Furthermore, the plaintiff's claims "must arise out of or relate to the" defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414. To demonstrate purposeful availment, the plaintiff need only show (1) that the defendant conducted some activity in the forum so as to subject it to personal jurisdiction there and (2) that the constitutional notions of fair play and substantial justice are satisfied such as to be consistent with due process requirements. *Burger King*, 471 U.S. 462, 464 (1985). This Court exercises personal jurisdiction over a nonresident defendant of the forum state to the maximum extent authorized by the law of the forum, usually as dictated by the state's long arm statute. FED R. CIV. P. 4(e), (k)(1).

Here, the Defendant admits that it utilized both public and private databases of trucking companies to obtain the Plaintiff's telephone number and contact him. Those databases indicate that the Plaintiff's telephone number is associated with the State of Georgia and only the State of Georgia. (Mot., p. 4, 5, 6 (describing

Joture's registration with the Georgia Secretary of State and public and private databases listing Joture)). In calling a number that it *admits it knew* was associated with a telephone *within Georgia*, and then in continuing this conduct of business by *sending a fuel card to a Georgia address*, Defendant also necessarily admits that it knowingly transacted business in Georgia and that this case "arises from". . . "transact[ing] any business within [Georgia] and "commit[ing] a tortious act within [Georgia]." O.C.G.A. § 9-10-91(1), (2). As will be explored below, this significant fact distinguishes this case from the *sole* contrary authority offered by the Defendant. *Contra L. Offs. of Shimshon Wexler, P.C. v. AICOM Sols. LLC*, No. 1:17-CV-1084-MHC, 2017 WL 5047903, at *1 (N.D. Ga. Oct. 30, 2017) [hereinafter *Wexler*].

The first subpart of demonstrating purposeful availment is satisfied here. Contrary to the Defendant's representations, Sections (1) and (2) of the Georgia Long Arm Statute confers personal jurisdiction to the full limits permitted by and co-extensive with the Due Process Clause so long as a case "arises from . . . transacting any business within [Georgia]." *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*, 620 S.E.2d 352, 355 (Ga. 2005) ("OCGA § 9–10–91(1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State.") So long as the Plaintiff can prove that the Defendant "transacted business" in Georgia

5

and this case arises from such attempt at transacting business here, this Court can justly exercise personal jurisdiction "to the maximum extent permitted by procedural due process." *Id.* Tellingly, the Defendant does not deny that it sells and brokers its services in Georgia. In fact, it attempted to send a fuel card to a Georgia address. (Compl. ¶ 27, 28). Indeed, it expressly *admits* that it attempted to advertise and sell its services to a phone number it admits it knew was associated with a Georgia address. And the Plaintiff alleges that "caller asked the Plaintiff where he was located to send him the membership card and the Plaintiff confirmed that he was in Georgia" and continued with the solicitation. *Id.*

On this basis, the cases cited by the Defendant are distinguishable because the Defendant has all but confirmed the allegation in its brief that it *transacted business in Georgia* under Section (1) and the phone calls at issue were made to telephone numbers it knew were in Georgia for the precise purpose of transacting more business in Georgia. And although the Rawlins Declaration claims that "Fleetsmarts does not conduct or transact any business in the State of Georgia," that statement is *flatly contradicted* by the preceding paragraph, where the Defendant admits that it "markets its services to truck drivers and trucking companies through various means." (*Compare* ¶ 15 *with* ¶ 14). It is also contradicted by the Plaintiff's allegations in the complaint that the caller continued with the solicitation after confirming an address *in Georgia* to send the

6

membership card. (Compl. ¶ 27, 28). The Rawlins Declaration is notably *silent* as to *which* states it "markets its services to truck drivers" in. As the Plaintiff's complaint demonstrate, it marketed its services, and provides such services, to truck drivers in Georgia and nationwide.

The cases cited by the Defendant are likewise distinguishable. For example, in *Wexler*, which was a TCPA case, the plaintiff had abandoned his claims under Section (1) under the Georgia Long Arm Statute. *Id.* at *3 n.1. And there, the plaintiff's *sole* argument that the defendants committed a tort in Georgia was that the plaintiff received the TPCA-violative fax "at its Decatur office." *Id.* at *2. This was flatly contradicted by the "face of the fax at issue" which bore the "Plaintiff's New York (rather than Georgia) address," which indicated that it was "directed to Plaintiff's New York office." *Id.* at *4. The facts at bar here stand in crisp contrast to *Wexler*, where the Defendant here has admitted that it knew it was contacting a telephone number associated with a Georgia address for the purpose of sending a membership card there.

The other cases cited by the Defendant on this point are likewise distinguishable because none of them deal with the *transaction of business in Georgia* using phone numbers Defendant knew was associated *with Georgia*. For example, *in LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 845 (11th Cir. 2013), the court held no purposeful availment under Section (3) of the Statute when the

7

defendant used a computer program to download the Georgia plaintiff's documents and further held that offering services to secure those documents did not constitute a persistent course of doing business in Georgia. Similarly, in *Anderson v. Deas*, 632 S.E.2d 682, 683 (Ga. App. 2006), the Court of Appeals found no purposeful availment for harassing phone calls sent into Georgia because although this was a tortious activity committed by an action outside Georgia, the statutory requisite of engaging in a "persistent course of conduct" was unmet. So too with *Huggins v. Boyd*, 697 S.E.2d 253, 254 (Ga. App. 2010), another Section (3) case involving emails sent to a Georgia resident, not based on facts regarding transacting business.

In any event, the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*. 141 S. Ct. 1017 (2021), casts doubt on the Court of Appeals' reasoning in *LABMD*, *Anderson*, and *Huggins*, which all held that torts involving electronic communications are "caused," and therefore, "committed," in the state where they are initiated. In *Ford*, a Montana resident passed away as a result of an accident the plaintiff claimed to be a result of Ford's negligence. *Id. at 1023*. Ford moved to dismiss based on a lack of personal jurisdiction. *Id.* Although it correctly denied general jurisdiction because it was headquartered in Michigan and was incorporated in Delaware, it also denied specific jurisdiction because the car was assembled in Kentucky, sold by a Ford dealer in Washington, then sold by third parties, not Ford, in Oregon, and then to the Montana resident. *Id.* Ford

8

argued, as Defendant does here, and as the defendants in the aforementioned cases did, that a break in the *causational* chain, such as not selling the car at issue into a specific state, also broke the *jurisdictional* chain. *Id.* at 1024.

Not so. The Supreme Court rejected the same causation-only approach proffered by both Ford and the defendants. In so doing, it clarified that an alleged break in the chain of *causation*, such as (allegedly) not having committed any specific tortious conduct from a specific state, akin to not having sold the car at issue into Montana, does *not* break the chain of *jurisdiction*, which is subject to its own analysis, *irrespective* of the causational elements of the tort. Defendant, like Ford, cannot deny that it stood ready to provide its services to Georgia residents and to conduct business there. *Cf. id.* at 1029. Nor can the Defendant deny that it did not know that it was calling a telephone number with an address associated with Georgia and that it would be subject to suit here arising out of further conduct of its business, for example, if the Plaintiff actually received the membership card *it offered to send to Georgia* and then sued for breach of contract.

Because the Defendant is unquestionably subject to specific personal jurisdiction here for selling its goods and services, the Defendant is also subject to specific personal jurisdiction because of related marketing conduct. A defendant that has accepted the privileges of directing business at the forum state has also accepted the burden of appearing before its courts, even if they have never

9

physically entered the forum state. *Burger King*, 471 U.S. at 476. Here, the plaintiff need only make out a *prima facie* case of personal jurisdiction and he has unquestionably done so.

And nothing about the exercise of jurisdiction against the Defendant here would offend traditional notions of fair play and substantial justice or at all be inconsistent with constitutional due process. The crux of the constitutional "due process analysis" is "foreseeability," "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.* "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *Id.* (cleaned up). There can be no doubt that Defendant stood ready to serve a market for its services to Georgia residents. And the Plaintiff's case arises out of that same business of soliciting in the course of conducting business conduct.

Finally, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior*

10

*Court*, 480 U.S. 102, 114 (1987). Plaintiff clearly has an interest in obtaining relief under the TCPA, and Georgia has an interest in protecting its residents. *See e.g. Hobbs v. Entrevoice Virtual Sols., Inc., 2019 U.S. Dist. LEXIS 124574, \*6-7* (N.D. Ga. 2019) ("Based on the allegations in Plaintiffs' complaint, the Court finds that it can exercise personal jurisdiction over Entrevoice. Those factual allegations… establish that Entrevoice transacted business in Georgia, Entrevoice's violations of the TCPA and corresponding harm to the Georgia Plaintiff arose directly from that transaction of business, and Entrevoice purposefully directed its conduct at Georgia by using an autodialer to call a cell phone with a Georgia area code. *See* O.C.G.A. § 9-10-91(1) (permitting the exercise of Georgia long-arm jurisdiction over a defendant who "[t]ransacts any business within this state"); *Keim v. ADF Midatlantic, LLC*, 199 F. Supp. 3d 1362, 1370 (S.D. Fla. 2016) (finding Constitutional Due Process requirements met in TCPA case where a defendant text messaged phone numbers affiliated with the forum state)").

To the extent that jurisdictional questions remain, this Court should permit jurisdictional discovery. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214–15 (11th Cir. 1999). When the plaintiff, as here, makes a *prima facie* showing that the exercise of personal jurisdiction is warranted, the Court should generally authorize jurisdictional discovery antecedent to resolve the motion and investigate the factual representations concerning jurisdiction. *Posner*, 178 F.3d at 1227–28 (11th Cir.

11

1999). Although the Plaintiff respectfully submits that the record here in unambiguous and that the Plaintiff has made out a *prima facie* case supporting the exercise of specific personal jurisdiction, to the extent that it does consider the issue of the Defendant's conduct of business in Georgia, the issue should not be decided simply on the pre-discovery affidavit of the Defendant without the Plaintiff having an opportunity to test those assertions.

B.      *The Defendant's Rule 12(b)(6) motion must be denied because the Plaintiff has plausibly alleged facts which support his Do Not Call Registry claim, which presumes that such phones are presumptively residential.*

1.  The Do Not Call Registry's protections are broader than that claimed by the Defendant, which apply to all numbers which are not registered to a "telephone exchange service for businesses."

"The Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). The Defendant is correct in asserting that purely business telephone numbers assigned to business telephone services are not subject to the protections of the National Do Not Call Registry, which explicitly only applies to "residential subscribers." However, its analysis in this regard is off, assuming without any support, and without citing to the *actual statutory text*, that any telephone number which has at any point ever been used in connection with a business, is

12

automatically not "residential." This assertion is flatly contradicted by the statutory text and other court decisions.

How does the FCC, the agency charged with implementing rules for Do Not Call Registry,[1] define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). Indeed, such language which specifically excludes only one type of services–telephone exchange services for businesses–from the protections afforded by the National Do Not Call Registry. The fact the relevant regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive.

Mr. Bond has alleged that he is subscribed to a telephone exchange service for consumers, and that he primarily uses his cell phone for residential use, and

---

[1] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

that the number at issue has been his personal cell phone number since 2005. (Bond Dec. ¶ 8). That number is not associated with a business, not part of a business account, and was listed on the Do Not Call Registry prior to Mr. Bond ever having started a business at all. (Bond Dec. ¶ 6, 8). And Mr. Bond has stated that he uses the number primarily for "personal, family, and household use, and not for business use." (Bond Dec. ¶ 9). Such allegations are plainly sufficient to state a claim under the Registry provisions of the TCPA. In fact, Mr. Bond maintains a separate number for his business which is not associated with a consumer cellular telephone service. (Bond Dec. ¶ 11, 12). What's more, even though not required to do so, Mr. Bond has also taken steps to correct the erroneous listing of his cell phone on the databases Defendant cites. (Bond Dec. ¶ 13). Notably, he affected that change on or about February 14, 2024, *prior to* two *additional* calls of which the Plaintiff also complains. (*Compare* Bond Dec. ¶ 13 *with* Compl. ¶ 24).

Mr. Bond has also declared that the residential number is an AT&T cellular number. (Bond Dec. ¶ 8). It is assigned to a non-business, residential, consumer cellular telephone service and is not part of a business account. (Bond Dec. ¶ 8). His cell phone provider does not market or service his plan for business use. (Bond Dec. ¶ 8). Mr. Bond's residential cellular number is not assigned to a "business subscriber" because it is not assigned to a "telephone exchange service for businesses" as required by 47 C.F.R. § 64.2305(d). (Bond Dec. ¶ 8).

14

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers*." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer*, 925 F.3d at 657, concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

In sum, this Court can easily discern that Mr. Bond has received non-consensual calls to a number he placed on the National Do Not Call Registry before he even started his business. Those calls were made to Mr. Bond's personal cell phone that he uses for personal, residential, and household purposes. He, not his company, now sues the Defendant for conduct inflicted upon him. Mr. Bond further outlines in his declaration how he personally suffered a concrete injury at the hands of the Defendant, including because the communications were highly annoying,

15

disruptive, and harmed him (Bond Dec. ¶ 15). Most importantly, the messages improperly invaded Mr. Bond's personal privacy. (*Id.*).

As the statutory and regulatory guidance make clear, Mr. Bond's number is presumptively residential and is therefore entitled to the Registry's protections. Moreover, his number is not registered to any telephone exchange service for businesses, a requirement making a number ineligible for inclusion on the Registry. Because Mr. Bond has pled the same, Defendant's Rule 12(b)(6) challenge must fail.

2. Any remaining factual dispute as to whether Mr. Bond is subscribed to a telephone exchange service for businesses is for a jury to decide. Discovery must not be bifurcated.

If this Court applies the plain statutory text, it should have no trouble in holding that, as confirmed through his Declaration and the factual circumstances here, Mr. Bond is subscribed to a residential telephone service because he is not subscribed to a telephone service for businesses. It should also have no trouble concluding that, because Mr. Bond's number is a cell phone, it is entitled to additional protections that make such a number presumptively residential. It must also credit the fact that Mr. Bond removed the erroneous listing, corrected it to his proper business number, and still got calls.  But even if this Court were to consider the evidence proffered by the Defendant, such evidence is better suited for a jury to determine in light of the applicable regulations.

16

To begin with, the only "evidence" that Defendant proffers to show that the Plaintiff's telephone is a business number under some unspecified, made-up, self-serving definition (again, not the statutory definition outlined in the Code of Federal Regulations) are Mr. Bond's old website and historic federal motor carrier registration data from a third party. But merely having such numbers in these two places does not mean that he uses the number at issue here for business purposes, especially when such erroneous listings were corrected to reflect the Plaintiff's correct business number and the Defendant *subsequently called the Plaintiff using the incorrect information anyway.* This is so for several reasons, not the least among them that Mr. Bond registered his number on the Do Not Call Registry *three years* before starting his business and had it for almost *twenty years* before starting his business.

For starters, Mr. Bond registered his number on the National Do Not Call Registry in 2020, years prior to starting his business, Joture LLC, as demonstrated by Exhibit B. Defendant's challenge should fail right there because Mr. Bond registered his residential cell phone on the Do Not Call Registry before he even created his business, rendering it residential. No provision of the TCPA or Do Not Call Registry rules require the *delisting* of a residential number from the Registry as soon as it was used in connection with a business. Were that so, there would be practically no person who has ever held a job on the Registry, as almost everyone

17

has given out their personal cell phone in connection with a business at some point in their lives, even for such things as simple as referring a friend or seeking a job.

Mr. Bond isn't even a trucker, and Joture is an entertainment company, not a trucking company. (Bond Dec. ¶ 7, 14). That business has its own, separate telephone number not at issue here. (*Id.* ¶ 11). But, in order to start his business, he needed to provide a telephone number. (*Id.* ¶ 10). Mr. Bond could not provide a business telephone number when setting up his business because *such business did not yet exist*, rendering it impossible to obtain a business telephone number. (*Id.*). And Mr. Bond could not start up his business without providing some telephone number. (*Id.*). Therefore, he provided his personal cell phone number to set up his business. (*Id.*). He later established a business phone number. (*Id.* ¶ 11).

At most, the conduct selectively cherrypicked by the Defendant demonstrates at most that Mr. Bond blended the business and personal uses for his cell phone at some point in time. But other district Courts and the Ninth Circuit have confirmed that this completely legitimate and lawful conduct does not deprive a consumer of the protections afforded by the Do Not Call Registry, nor transform the number into a business line. Indeed, as the Ninth Circuit articulated in *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022), "We agree with the view of the majority of the district courts and conclude that a presumptively residential cell phone can be residential even when used for both personal and

18

business purposes." Notably, the Ninth Circuit in *Porch* also considered the same FCC order in *Krakauer*, which held that cellular phones are presumptively residential, as further support in its conclusion that mixed-use cell phones in particular were entitled to the Registry's protections.

As the Ninth Circuit explained in *Porch*, district courts might consider many factors, where are intertwined with the merits, in assessing whether a mixed-use phone is residential. Among the factors the Ninth Circuit identified included (1) whether plaintiffs have held out to the public or advertised their phone numbers for business purposes; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) whether, and the extent to which, plaintiffs use their phones for business transactions or employment; and (4) whether, and the extent to which, plaintiffs' employers (or other business entities) pay for or reimburse plaintiffs for their phone bills. *Id.*

Defendant does not conduct the bare minimum of this analysis, further demonstrating that it is inappropriate to find that he has failed to state a claim at the pleadings stage. Defendant can only point to the first of these four factors as *potentially* applicable here. Perhaps realizing that it cannot realistically claim that the number is ineligible for registration on the Do Not Call Registry, the Defendant instead asks the Court to bifurcate discovery, which makes little sense, because in a TCPA case, the questions here would be intertwined with the merits, including the

19

legal issues of enhanced protections for cell phones that obviate a business registration analysis. And not only does the Defendant not conduct any legal analysis for why the *Porch* factors apply or do not apply here, it does not even present sufficient evidence to permit this Court to determine definitively that such evidence demonstrates failure to state claim at this stage, in any event. This Court cannot, therefore, make such a drastic conclusion as holding that the Plaintiff has failed to do so based on two pieces of disputed and easily explainable evidence. Indeed, when rejecting a bifurcation request in a TCPA case recently, another federal court held:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*See Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023). The Court should decide the same here.

Bifurcation of this case is particularly inappropriate because the majority of district courts have concluded that a cell phone used for both personal and business purposes can still be regarded as "residential" without further pleading. As nearly every district and circuit court to address this issue has concluded, allegations

20

nearly identical to those here are sufficient to allow the Court to conclude that a cell phone is "residential" for MTD purposes. *See, e.g.*, *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Rosenberg v. LoanDepot.com LLC*, No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *27 (D. Mass. Jan. 24, 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."); *Barton v. Temescal Wellness, LLC*, No. 4:20-cv-40114-TSH, 2021 U.S. Dist. LEXIS 42211, at *13-14 (D. Mass. Mar. 8, 2021); *Boardman v. Green DOT Corp.*, No. 21-cv-174, U.S. Dist. LEXIS 156403, at *1, 4-6 (W.D.N.C. Aug. 19, 2021); *Sagar v. Kelly Auto Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781, at *16 (D. Mass. Nov. 29, 2021).

Indeed, the only way of proving a number is *not* residential, as articulated above, is by showing that the number is assigned to a telephone exchange service for business, a fact which is readily ascertainable from various commercial databases. Accordingly, it is unclear as to what (if any) bifurcated discovery with respect to the Plaintiff or his use of the cellular telephone number will establish. Furthermore, the Defendant's concerns are grounded in no actual facts and ignores the fact that this is a textbook TCPA Do Not Call Registry class action, of the sort

21

that federal courts routinely certify and circuit courts uphold (let alone allow to proceed to conventional discovery).

Defendant's other citations and parallels are mere red herrings meant to distract the Court from the inevitable: the Plaintiff's number was correctly listed on the Do Not Call Registry. If the Defendant wishes to present evidence which it believes demonstrates that the Plaintiff's number was incorrectly listed on the Registry, it is free to do so to a jury.

## IV. CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit jurisdictional and other discovery, as necessary.

Date: June 13, 2024

*/s/ Anthony Paronich*
Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

Steve Koval
The Koval Firm, LLC
3575 Piedmont Rd NE
15 Piedmont Center Suite 120
Atlanta, GA 30305
Steve@KovalFirm.com

*Counsel for Plaintiff and the proposed class*