## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSEPH BOND, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

BLUE WATER CAPITAL LLC d/b/a
FLEETSMARTS,

     Defendant.

Civil Action No.
1:24-cv-01612-VMC

## ORDER

Before the Court is Defendant's Motion to Dismiss or, in the Alternative,

Motion to Bifurcate ("Motion," Doc. 10). For the reasons that follow, the Court

enters the following order.

## Background[1]

### I.    The Parties

Plaintiff Joseph Bond lives in Georgia. (Doc. 1 ¶ 6). He has filed this putative

class action against Defendant Blue Water Capital LLC d/b/a Fleetsmarts

("Fleetsmarts") under the Telephone Consumer Protection Act of 1991, 47 U.S.C.

---

[1] Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's Complaint and are accepted as true, *Cooper v. Pate*, 378 U.S. 546, 546 (1964), except where controverted by evidence with respect to Defendant's lack of personal jurisdiction defense. *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

§ 227) (*Id.* ¶ 3). Fleetsmarts is organized in the State of Utah with its principal place of business in Salt Lake City, Utah. (Declaration of Michael Rawlins dated May 28, 2024 ¶ 4, "Rawlins Decl.," Doc. 10-1). Fleetsmarts offers a fuel discount program where you pay a membership fee in exchange for discounted fuel. (Doc. 1 ¶ 15).

## II.    The Calls

To generate leads, Fleetsmarts makes telemarketing calls to consumers who have never had a relationship with it. (*Id.* ¶ 16). Defendant made multiple telemarketing texts[2] to Mr. Bond, including on January 20, 28 and February 1, 2024. (*Id.* ¶ 21). On February 26 and 27, 2024 Fleetsmarts made telemarketing calls to Mr. Bond. (*Id.* ¶ 24). The telemarketing calls related to Fleetsmart's discount fuel membership program. (*Id.* ¶ 25). On one call, the caller asked the Plaintiff where he was located to send him the membership card and the Plaintiff confirmed that he was in Georgia. (*Id.* ¶ 27). The solicitation continued, but the Plaintiff was uninterested and ended the call. (*Id.* ¶ 28).

However, Mr. Bond's telephone number (the "Number"), (252)-509-XXXX, is on the National Do Not Call Registry since Mr. Bond put it on the registry on April 3, 2020. (Doc. 1 ¶ 18; Bond Decl. ¶ 4). Mr. Bond uses his number primarily

---

[2] The Complaint refers to these as "calls," likely within the TCPA sense. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii)."). But the Court uses "text" and "call" in the colloquial sense for clarity with no prejudice to Plaintiff's legal claims intended.

2

for personal, family, and household use, and not for business use. (Declaration of

Joseph Bond dated June 8, 2024 ¶ 9, "Bond Decl.," Doc. 17-1).[3]

## III.    Fleetsmart's "Does Not" Declaration[4]

As noted above, Fleetsmarts is based out of Utah. (Rawlins Decl. ¶¶ 4–5).

Fleetsmarts has never filed for a Certificate of Authority to do business in the State

---

[3] Whether this is or has always been so is the subject of some dispute that the Court need not reach for the purpose of this Order.

[4] Declarations setting forth a list of "does nots" or "nevers" are common in motions to dismiss for lack of personal jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) ("Tamborlee filed a declaration of its co-founder, William Mackenzie, that the . . . the Key West post-office box . . . "has never belonged to or even been associated with Tamborlee, its owners, officers, representatives, agents or employees," that "Tamborlee has never used this P.O. Box for any purpose," . . . [and] that the different Key West address listed in the 2005 financing statement never belonged to Tamborlee."); *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790–91 (11th Cir. 2017) ("OCT attached the declaration of Richard Graham . . . [stating] OCT never owned or used the P.O. box mailing address in Miami, Florida identified on the website, www.canopytour.com, which is operated by an independent travel agency; and OCT never maintained any place of business in Florida or a branch office in Florida or the United States."); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) ("The affidavit primarily explains Salem's corporate structure and status; summarily asserts that Salem never has done business in or directed contacts into Florida; admits certain peripheral connections with the state; and denies in a conclusory way any other actions that would bring Salem within the ambit of the Florida long-arm statute.").

However, the Eleventh Circuit has cautioned that the Court should "consider only those portions of [such] . . . Affidavit[s] that set forth specific factual declarations within the affiant's personal knowledge," and disregard "statements, although presented in the form of factual declarations, [that] are in substance legal conclusions." *Posner*, 178 F.3d at 1215 (citing *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994)).

of Georgia. (*Id.* ¶ 7). Fleetsmarts does not maintain a registered agent for service of process in the State of Georgia. (*Id.* ¶ 8). Fleetsmarts does not have offices, bank accounts, telephone listings, or other assets in the State of Georgia. (*Id.* ¶ 9). Fleetsmarts does not have any director, officer, employee, agent, or local resident assigned to duty in the State of Georgia. (*Id.* ¶ 10). Fleetsmarts does not own or lease any real or personal property in the State of Georgia. (*Id.* ¶ 11). Fleetsmarts does not have any parent or subsidiary that is registered to do business, or maintains an office, in the State of Georgia. (*Id.* ¶ 12). Fleetsmarts is not a member, investor, or partner in any entity that is a resident of the State of Georgia. (*Id.* ¶ 13). Fleetsmarts markets its services to truck drivers and trucking companies through various means, including telephone calls and text messages. (*Id.* ¶ 14). However, no agent of Fleetsmarts ever contacted, or attempted to contact, Joseph Bond by telephone or text message while located within the State of Georgia. (*Id.*). Any contact with Mr. Bond would have originated from Utah. (*Id.*).

## Legal Standard

A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th

Cir. 1988). A plaintiff may establish a prima facie case by presenting sufficient evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hosp.*, 926 F. Supp. 1106, 1112 (N.D. Ga. 1996). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1554 (11th Cir. 1995); *see also Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). The Court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence. *Morris*, 843 F.2d at 492; *Allegiant Physicians*, 926 F. Supp. at 1112; *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

## Discussion

### I.    Personal Jurisdiction

Fleetsmarts argues this Court lacks personal jurisdiction over it. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether

personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* (quoting *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998)).

Georgia's long-arm statute provides for several bases for exercising personal jurisdiction over a non-resident, but the Court focuses on three:

> A court of this state may exercise personal jurisdiction over any non-resident . . . as to a cause of action arising from any acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

> revenue from goods used or consumed or services
> rendered in this state; . . . .

O.C.G.A. § 9-10-91.

The Eleventh Circuit has instructed that courts in this circuit "must apply the specific limitations and requirements of O.C.G.A. § 9–10–91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1263.[5]

"For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email." *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844–45 (11th Cir. 2013) (citing *Anderson v. Deas*, 632 S.E.2d 682, 683 (Ga. Ct. App. 2006)). This means that Mr. Bond cannot rely on subsection (2), the "commits a tortious act within this state" prong of the statute.

---

[5] Mr. Bond cites to the Georgia Supreme Court's decision in *Innovative Clinical and Consulting Services v. First National Bank of Ames,* 620 S.E.2d 352 (Ga. 2005) to delineate the extent of the long-arm statute, (Doc. 17 at 5) but as one court has recognized, the Eleventh Circuit and "state courts do not appear to read *Innovative Clinical* the same way." *Power Guardian, LLC v. Directional Energy Corp.*, 904 F. Supp. 2d 1313, 1319 (M.D. Ga. 2012) (acknowledging "the apparent tension between *Diamond Crystal* and Georgia courts' interpretation of the Georgia long-arm statute following *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352 (Ga. 2005).").

*Id.*; *accord L. Offs. of Shimshon Wexler, P.C. v. AICOM Sols. LLC*, No. 1:17-CV-1084-MHC, 2017 WL 5047903, at *3 (N.D. Ga. Oct. 30, 2017) ("Accordingly, because the sole basis for the exercise of jurisdiction in this case is Plaintiff's receipt of a fax sent from out of state, the Charter Defendants are not subject to personal jurisdiction under subsection (2) of Georgia's long-arm statute.").[6]

Thus, the Mr. Bond must proceed under subsection (1), transacts any business in state; or subjection (3), causes a tortious injury plus regular or persistent conduct or substantial revenue in state. The Court analyzes these next.

### A.    Transacts any Business

"Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia]. . . .'" *Diamond Crystal*, 593 F.3d at 1264 (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)). "That said, a defendant need not physically enter the state. As a result, a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Id.* (citing *Innovative Clinical*, 620 S.E.2d at 355–56).

---

[6] The Court agrees with Fleetsmarts that *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021) says nothing about where an injury occurs for the purpose of Georgia's long-arm statute.

"While even a minimal number of communications may provide a basis to exercise personal jurisdiction under Georgia's long-arm statute, . . . 'Georgia courts can only exercise personal jurisdiction under the transacting business provision if the nonresident's conduct was either directed at or occurred in Georgia.'" *Risper v. Mountain Run Sols., LLC*, No. 3:20-cv-00209-TCB-RGV, 2021 WL 7708393, at *5 (N.D. Ga. Nov. 24, 2021), *report and recommendation adopted*, 2021 WL 7708538 (N.D. Ga. Dec. 10, 2021) (citing *Hampton-Muhamed v. James B. Nutter & Co.*, No. 1:13-cv-03659-CC-LTW, 2015 WL 13322125, at *4 (N.D. Ga. Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 13439809, at *2 (N.D. Ga. Mar. 19, 2015); *Belle Terrace Presbyterian Church v. CC Recovery*, No. CV 112-084, 2014 WL 317190, at *2 (S.D. Ga. Jan. 28, 2014)). Additionally, Courts have looked at factors such as whether

> the defendant has offices, manufacturing plants or distribution facilities in Georgia; has ever registered to do business here; has employees, distributors or sales representatives residing or working in Georgia; pays taxes here; targets Georgia through print, television, radio or Internet advertising; and directly sells its products in Georgia or to distributors located in Georgia.

*LifeBrite Lab'ys, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 1:23-CV-03748-JPB, 2024 WL 3030657, at *4 (N.D. Ga. June 17, 2024) (citing *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1345 (N.D. Ga. 2013)).

Aside from these guidelines, there does not appear to be a one-sized-fits-all approach for "transacts any business," and arguing by analogy is inevitable. For example, in *Diamond Crystal*, the defendant "sent purchase orders to Diamond Crystal in Georgia, . . . requested delivery by 'customer pickup' at Diamond Crystal's plant in Savannah, . . . directed third parties to accept delivery of the goods in Savannah, . . . took legal title to the goods in Georgia, and . . . promised to pay money into Georgia on the two transactions in question." 593 F.3d at 1266–67.

In *Belle Terrace Presbyterian Church*, a phone call, three mailed bills, and an email were held to be enough to establish conducting a debt collection business in Georgia. 2014 WL 317190, at *1. In *Serveco North America, LLC v. Bramwell*, No. 4:22-CV-140-MLB, 2023 WL 2583275, at *3–4 (N.D. Ga. Mar. 20, 2023), the defendant's contacts were limited to "communicating (perhaps by phone or on the Internet) with Plaintiff" from outside of Georgia," which was not enough. Likewise, *Degenhart v. Arthur State Bank*, No. 4:11-cv-041, 2011 WL 4527360, at *4 (S.D. Ga. Sept. 28, 2011) and *Steger v. Maxwell & Morgan, P.C.*, No. 1:15-cv-03396-LMM-JKF, 2016 WL 11570387, at *2 n.8 (N.D. Ga. Dec. 22, 2016) each held that where contacts are solely originating out of state, knowledge that the counterparty is in Georgia is a necessary but not sufficient condition for transacting any business.

Here, there is no question that Fleetsmarts lacks a physical Georgia footprint. (*See supra*, Background § III. Fleetsmarts admits that it markets its services to truck drivers and trucking companies through various means, including telephone calls and text messages, (Rawlins Decl. ¶ 14), and Fleetsmarts does not deny that it markets to Georgians. Indeed, Plaintiff has alleged that Fleetsmarts markets throughout the United States and that the potential members of the putative class number at least in the thousands. (Doc. 1 ¶¶ 31–32, 35). Moreover, Fleetsmarts admits that at least in this case, it knew that Mr. Bond was located in Georgia and continued solicitation efforts. (Doc. 1 ¶ 27, 28; Doc. 18 at 3–4). The missing piece is whether Fleetsmarts's general marketing efforts target Georgia, because a single knowing contact with Georgia is not enough under the above case law. But there is nothing in the record whatsoever in this respect. So, there is no basis for subsection (1) jurisdiction under this record.

## B.    Tortious Injury Plus Contacts

"Under subsection three, 'courts do have jurisdiction over nonresident defendants . . . when there exist requisite minimum contacts other than the commission of the tort itself.'" *Amin v. O'Brien*, No. CV 5:24-022, 2025 WL 90116, at *4 (S.D. Ga. Jan. 14, 2025) (quoting *Bradlee Mgmt. Servs., Inc. v. Cassells*, 292 S.E.2d 717, 720 (Ga. 1982)).

> In determining whether a nonresident defendant may be
> subject to personal jurisdiction under subsection (3),

11

> Georgia courts consider many factors including—but not
> limited to—whether a defendant (1) regularly does
> business or solicits business within Georgia; (2) engages
> in a persistent course of conduct within Georgia; (3)
> derives substantial revenue from services rendered
> within Georgia; (4) has employees located within
> Georgia; or (5) is authorized to do business in Georgia.

*LABMD*, 509 F. App'x at 845 (citing *Gust v. Flint*, 356 S.E.2d 513 (Ga. 1987)). "Other

factors weighing against a finding of personal jurisdiction are when a defendant's

contact with Georgia is limited to a single business transaction and when that

transaction is conducted via telephone." *Id.* (citing *Gust*, 356 S.E.2d 513).

In *LABMD*, the defendant was "not registered to do business in Georgia,

ha[d] no employees or customers in Georgia, derive[d] no revenue from business

activities in Georgia, own[ed] no Georgia property, and pa[id] no Georgia taxes,"

and its contacts "with Georgia consisted of one phone call and nine emails to

LabMD," plus "a website that is accessible to Georgia residents" that "merely

advertises . . . services, [but] does not offer products or services for purchase

online, and does not target Georgia residents." 509 F. App'x at 845. This contact

was "not enough under Georgia law to subject [a non-resident] to personal

jurisdiction in Georgia courts." *Id.*

Here, the record at present is insufficient for the Court to determine that

Fleetsmarts' contacts suffice under this subsection for the same reasons the Court

gave above. On the one hand, the Court reiterates that Fleetsmarts lacks a Georgia

footprint, but on the other notes that Fleetsmarts' declaration omits any reference to whether it derives substantial revenue from Georgia or pays taxes in Goergia, and as noted above, does not specifically deny that it markets to Georgians. (*See generally* Doc. 10-1).

Because the Court cannot yet find that Georgia's long-arm statute reaches the conduct in question, it does not consider at this time whether jurisdiction comports with due process. *Diamond Crystal*, 593 F.3d at 1263 ("[I]n assessing the propriety of the exercise of personal jurisdiction, courts must . . . ensure that both, separate prongs of the jurisdictional inquiry are satisfied.").

## II.    Remaining Issues

Mr. Bond seeks jurisdictional discovery as an alternative in his response brief, which Fleetsmarts challenges as procedurally inappropriate. (Doc. 17 at 11–12; Doc. 18 at 11). Fleetsmarts is correct that Mr. Bond's request should have been made by motion, but courts have discretion to forgive that error. *Amin*, 2025 WL 90116, at *5. Here, while the record does not indicate the extent of Fleetsmarts's marketing efforts or revenue in Georgia, Fleetsmarts's declaration does not affirmatively deny their extent, meaning jurisdictional discovery could potentially reveal a basis for exercising personal jurisdiction over Fleetsmarts. The Court will therefore order jurisdictional discovery.

Because the Court is unsure whether it has personal jurisdiction over Fleetsmarts, it cannot and does not reach the remainder of its merits-based arguments.

## Conclusion

For the above reasons, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. 10) is **DENIED WITHOUT PREJUDICE** pending jurisdictional discovery. Defendant is excused from filing an answer or other response to the Complaint pending the outcome of discovery. It is

**FURTHER ORDERED** that Plaintiff is granted leave to conduct jurisdictional discovery, and the discovery period shall be limited to 90 days, beginning 7 days after the date of entry of this Order. Defendant must file an answer or renewed motion no later than 14 days after the conclusion of discovery.

**SO ORDERED** this 21st day of March, 2025.

Victoria Marie Calvert
United States District Judge