## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH BOND, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.: 1:24-cv-01612-VMC |
| BLUE WATER CAPITAL LLC d/b/a FLEETSMARTS, | : : : | |
| Defendant. | : : | |

### Defendant's Renewed Motion to Dismiss or, in the Alternative, Motion to Bifurcate, and Memorandum of Law in Support

Blue Water Capital LLC (d/b/a Fleetsmarts, "FleetSmarts") previously filed a motion to dismiss Plaintiff's claim against it under the Telephone Consumer Protection Act (TCPA), arguing that (1) this Court lacks personal jurisdiction over FleetSmarts, and (2) Plaintiff fails to state a claim. (Doc. 10). On March 21, 2025, this Court held that on the record before it, "the Court cannot yet find that Georgia's long-arm statute reaches the conduct" alleged by Plaintiff. (Doc. 20 at 13). Accordingly, the Court ordered ninety days of jurisdictional discovery and ordered Fleetsmarts to file a renewed motion to dismiss once discovery ended. (*Id.* at 14).

After three months of jurisdictional discovery, it is clear there can be no

personal jurisdiction over FleetSmarts. The record now before the Court shows that FleetSmarts does not target Georgia for marketing, that it does not pay taxes in Georgia, and that it derives less than one percent of its income from Georgia.

Moreover, Plaintiff fails to state a claim because the TCPA's Do-Not-Call list only applies to residential numbers, yet Plaintiff's own public filings with the U.S. Department of Transportation (of which this Court may take judicial notice) show his number is used for business. On either of these bases, Plaintiff's claim must be dismissed.

If Plaintiff's claim is not dismissed, then discovery should be bifurcated, so that the parties first exchange discovery on the narrow, case-dispositive question of whether Plaintiff's telephone number is a business or residential number. As Judge Steve C. Jones held in a recent TCPA case, bifurcating discovery can "promote the efficient resolution of this matter" and "allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff." *Newell v. Aliera Healthcare, Inc.*, No. 1:19-CV-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (Jones, J.). Multiple courts have adopted this approach on the exact issue present in this case: whether a TCPA plaintiff's telephone number is a residential or business number.

## I.    Facts and Procedural History

### a. FleetSmarts, a Utah-based company, sends text messages and makes phone calls to Plaintiff, but otherwise has no contacts with Georgia.

This Court previously summarized Plaintiff's factual allegations:

> Fleetsmarts is organized in the State of Utah with its principal place of business in Salt Lake City, Utah. Fleetsmarts offers a fuel discount program where you pay a membership fee in exchange for discounted fuel.
>
> To generate leads, Fleetsmarts makes telemarketing calls to consumers who have never had a relationship with it. Defendant made multiple telemarketing texts to Mr. Bond, including on January 20, 28 and February 1, 2024. On February 26 and 27, 2024 Fleetsmarts made telemarketing calls to Mr. Bond. The telemarketing calls related to Fleetsmart's discount fuel membership program . . . . However, Mr. Bond's telephone number (the "Number"), (252)-509-XXXX, is on the National Do Not Call Registry since Mr. Bond put it on the registry on April 3, 2020.

(Doc. 20 at 2) (internal citations omitted).

The Court also noted the lack of connection between FleetSmarts' Utah-based business and Georgia:

> Fleetsmarts is based out of Utah. Fleetsmarts has never filed for a Certificate of Authority to do business in the State of Georgia. Fleetsmarts does not maintain a registered agent for service of process in the State of Georgia. Fleetsmarts does not have offices, bank accounts, telephone listings, or other assets in the State of Georgia. Fleetsmarts does not have any director, officer, employee, agent, or local resident assigned to duty in the State of Georgia. Fleetsmarts does not own or lease any real or personal property in the State of Georgia.

> Fleetsmarts does not have any parent or subsidiary that is registered to do business, or maintains an office, in the State of Georgia. Fleetsmarts is not a member, investor, or partner in any entity that is a resident of the State of Georgia. Fleetsmarts markets its services to truck drivers and trucking companies through various means, including telephone calls and text messages. However, no agent of Fleetsmarts ever contacted, or attempted to contact, Joseph Bond by telephone or text message while located within the State of Georgia. Any contact with Mr. Bond would have originated from Utah.

> (*Id.* at 3-4) (internal citations omitted).

As such, FleetSmarts moved to dismiss for lack of personal jurisdiction. (Doc. 10 at 11). FleetSmarts also moved to dismiss on the grounds that Plaintiff's number was a business number (*id.* at 13), an argument which the Court expressly declined to address in its order. (Doc. 20 at 3 n.3, 14).

### b. The Court holds that Plaintiff has not established personal jurisdiction under Georgia's long-arm statute and orders jurisdictional discovery.

The Court focused on three potential bases for establishing personal jurisdiction over FleetSmarts under Georgia's long-arm statute. (*Id.* at 6-7) (citing O.C.G.A. § 9-10-91). The Court held that based on Plaintiff's allegations, he could not "rely on subsection (2), the 'commits a tortious act within this state' prong of the statute. (*Id.* at 7) (collecting authority). "Thus, Mr. Bond must proceed under subsection (1), transacts any business in state; or subjection (3), causes a tortious injury plus regular or persistent conduct or substantial revenue in state." (*Id.* at 8).

4

Analyzing subsection (1), the Court observed that "there is no question that Fleetsmarts lacks a physical Georgia footprint." (*Id.* at 11). "The missing piece is whether Fleetsmarts's general marketing efforts target Georgia, because a single knowing contact with Georgia is not enough under the above case law. But there is nothing in the record whatsoever in this respect. So, there is no basis for subsection (1) jurisdiction under this record." (*Id.*).

Lastly, analyzing subsection (3), the Court held:

> [T]he record at present is insufficient for the Court to determine that Fleetsmarts' contacts suffice under this subsection for the same reasons the Court gave above. On the one hand, the Court reiterates that Fleetsmarts lacks a Georgia footprint, but on the other notes that Fleetsmarts' declaration omits any reference to whether it derives substantial revenue from Georgia or pays taxes in Georgia, and as noted above, does not specifically deny that it markets to Georgians . . . .

> [W]hile the record does not indicate the extent of Fleetsmarts's marketing efforts or revenue in Georgia, Fleetsmarts's declaration does not affirmatively deny their extent, meaning jurisdictional discovery could potentially reveal a basis for exercising personal jurisdiction over Fleetsmarts. The Court will therefore order jurisdictional discovery.

> (*Id.* at 12-13) (internal citations omitted).

### c. FleetSmarts' marketing does not target Georgia, and FleetSmarts does not pay taxes or derive substantial revenue from Georgia.

FleetSmarts does not in any way target or direct its marketing to Georgia.

*See* Declaration of Mike Rawlins dated July 7, 2025 ¶ 4 (attached hereto as Ex. 1);

Defendant's Objections, Responses, and Answers to Plaintiff's First Set Of

Jurisdictional Discovery at 6-7 (attached hereto as Ex. 2). Rather, "FleetSmarts'

informal 'marketing' consist entirely of making outbound phone calls or sending

text messages to commercial telephone numbers voluntarily listed by their owners

on the U.S. Department of Transportation SAFER website. Such calls and texts are

not targeted or restricted to any particular state." (Ex. 1 ¶ 5); (*see also* Ex. 2 at 3).

Moreover, FleetSmarts does not pay taxes in Georgia. (Ex. 1 ¶ 6). Nor does

FleetSmarts derive "substantial revenue" from Georgia, as FleetSmarts' discovery

responses show that it derives less than one percent of its revenue from Georgia.

(Ex. 2 at 6); (*see also* Ex. 1 ¶ 7).

### d. Plaintiff publishes his Number as the commercial telephone number for his interstate trucking business in a filing with the U.S. Department of Transportation.

On March 26, 2023, Plaintiff filed articles of organization for Joture LLC, a

trucking company, with the Georgia Secretary of State, listing Plaintiff as the

organizer and registered agent. Certificate of Organization and Articles of

Organization for Joture LLC (attached hereto as Ex. 3) at 2. On January 4, 2024,

Plaintiff registered Joture LLC as an interstate trucking carrier with the U.S.

Department of Transportation, as shown on the department's website:

5/17/24, 12:20 PM                           Safety Measurement System - Overview (U.S. DOT# 4173849)

 Safety
Measurement
System

## Carrier Registration (as of 4/26/2024, updated monthly)

**CARRIER REGISTRATION INFORMATION (MCS-150 DATE: 01/04/2024)**

Legal Name: JOTURE LLC                          Vehicle Miles Traveled: 1
DBA Name:                                       VMT Year: 2022
U.S. DOT#: 4173849                              Power Units: 1
Address: 1617 BROOK VIEW AVE                    DUNS Number: 13-024-5023
ATLANTA, GA 30340                               Drivers: 1
Telephone: (470) 283-0942                       Carrier Operation: Interstate
Fax:                                            Passenger: No
Email: JFBOND.JB@GMAIL.COM                      HM: No
                                                HHG: No
                                                New Entrant: No

Carrier Registration Information for Joture LLC (attached hereto as Ex. 4) at 1. The U.S. Department of Transportation's website only shows current registration data for carriers registered with the agency, and the current telephone number registered with the company is 470-283-0942. *Id.* However, third-party websites (like BrokerSnapshot.com) regularly scrape and store data from the U.S. Department of Transportation website. Records on Broker Snapshot show that the telephone number previously registered with Joture LLC was (252) 509-1282 (as seen in the bottom right hand corner of the below screenshot), the same Number described in the Complaint:



Broker Snapshot for Joture LLC as of February 9, 2024 (attached hereto as Ex. 5) at 1; Compl. ¶ 18 (identifying number as "(XXX)-509-XXXX"). On February 15, 2024, just two months before this Complaint was filed, the telephone number registered for Joture LLC was changed:

CONTACTS

| | |
|---:|:---|
| Physical Address | 1617 BROOK VIEW AVE, ATLANTA, GA, 30340 |
| Mailing Address | - NEW |
| Phone | (470) 283-0942 NEW |
| Cell | — |
| Contact Name | JOSEPH BOND |
| Fax | — |
| Email | jfbond.jb@gmail.com |

Broker Snapshot for Joture LLC as of February 15, 2024 (attached hereto as Ex. 6) at 2. Moreover, archived copies of the website www.joture.com show that the telephone number listed on that website as of February 14, 2022 was (252) 509-1282 (as shown in the upper right hand corner of the below screenshot):



Wayback Machine for www.joture.com as of February 14, 2022 (attached hereto as Ex. 7).[1]

---

[1] In addition to registering this number with the U.S. Department of Transportation and including it on the www.joture.com website, Plaintiff has disclosed his full Number in a publicly filed subpoena in another TCPA lawsuit that

In his response to FleetSmarts' initial motion to dismiss, Plaintiff conceded that he "placed the 252-XXX-XXXX on [his] website initially and on [his] Federal Motor Carrier application" for Joture. (Doc. 17-1 ¶ 10).

### e. Plaintiff files suit, claiming he was called on his "residential" number but failing to mention he registered that number for his trucking business with the U.S. Department of Transportation.

Plaintiff alleges that his Number is used for residential purposes and for personal, non-business calls only. *Id.* ¶¶ 19-20. The Complaint does not mention that Plaintiff registered his Number with the U.S. Department of Transportation as the telephone number for Plaintiff's trucking business. *See id.*

Plaintiff brings a single claim against FleetSmarts, alleging violation of the TCPA by making telemarketing calls. Compl. ¶ 44. Plaintiff also seeks to represent a class of similarly situated persons and entities. *Id.* ¶ 31.

## II.    Standard of Review

### a. Rule 12(b)(2) – Lack of personal jurisdiction

"A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant." *Saunders v. Saunders*, No. 1:21-CV-01594-VMC, 2023 WL 2372057, at *1 (N.D. Ga. Jan. 31, 2023) (Calvert, J.) (citing Fed. R. Civ. P. 12(b)(2)). "Plaintiff bears the burden of establishing jurisdiction in this Court."

---

Plaintiff has filed. *See* Subpoena, *Bond v. Allstate Ins. Co.*, No. 1:24-mc-00225-UNA, ECF No. 1-3 at 3-4 (D. Del.) (attached hereto as Ex. 8).

*Id.* (citing *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "If the defendant challenges jurisdiction and supports the challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." *L. Offs. of Shimshon Wexler, P.C. v. AICOM Sols. LLC*, No. 1:17-CV-1084-MHC, 2017 WL 5047903, at *2 (N.D. Ga. Oct. 30, 2017) (Cohen, J.) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

### b. Rule 12(b)(6) – Failure to state a claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *S. Ass'n of Colleges & Sch. Comm'n on Colleges, Inc. v. Bennett Coll.*, No. 1:21-CV-03060-VMC, 2022 WL 5241217, at *3 (N.D. Ga. Sept. 23, 2022) (Calvert, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *aff'd,* No. 22-13289, 2023 WL 2231773 (11th Cir. Feb. 27, 2023).

In deciding a Rule 12(b)(6) motion to dismiss, "a district court may take judicial notice of matters of public record . . . ." *Tucker v. United States*, No. 1:16-CV-2791-MHC, 2017 WL 5494086, at *2 (N.D. Ga. Mar. 14, 2017) (Cohen, J.) (taking judicial notice of letter from U.S. Department of Veterans Affairs in granting 12(b)(6) motion to dismiss), *aff'd,* 724 F. App'x 754 (11th Cir. 2018). "It is established law that a court may take judicial notice of government websites."

*Patrick v. Poree*, No. 1:22-CV-04236-VMC, 2022 WL 18938280, at *1 n.1 (N.D. Ga. Dec. 7, 2022) (Calvert, J.) (collecting cases); *see also Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1296 n.2 (N.D. Fla. 2018) (granting motion to dismiss after taking judicial notice of "Air Carrier Certificate" issued to defendant that was available on the Federal Aviation Administration (FAA)'s website); *In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 WL 323219, at *7 (N.D. Ga. Jan. 28, 2009) (granting motion to dismiss after taking judicial notice of information "drawn from a United States Government agency source, the accuracy of which cannot reasonably be questioned"). "[T]he overwhelming number of courts that have decided the issue" have "take[n] judicial notice of the contents of WayBack Machine evidence [a website that maintains archived copies of historical webpages] because they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (quoting Fed. R. Evid. 201(b)(2)); *see also S. Ass'n of Colleges & Sch. Comm'n on Colleges, Inc.*, 2022 WL 5241217, at *3 n.2 (taking judicial notice of documents available on plaintiff's website). Lastly, the Court may consider "the factual concessions in [a plaintiff's] Response" to a motion to dismiss. *Ash v. Douglas Cnty.*, No. 1:14-CV-1440-ELR-LTW, 2015 WL 12591772, at *5 n.7 (N.D. Ga. July 31, 2015) (collecting cases).

## III.    Argument

**a. There is no personal jurisdiction over FleetSmarts, as FleetSmarts' marketing does not target Georgia, and FleetSmarts does not pay taxes or derive substantial revenue from Georgia.**

In its order, this Court held that "[t]he missing piece is whether Fleetsmarts's general marketing efforts target Georgia, because a single knowing contact with Georgia is not enough under the above case law. But there is nothing in the record whatsoever in this respect. So, there is no basis for subsection (1) jurisdiction under this record." (Doc. 20 at 11). Similarly, the Court held that "the record at present is insufficient for the Court to determine that Fleetsmarts' contacts suffice under [] subsection [(3) of the Georgia long-arm statute] for the same reasons the Court gave above [as to subsection (1)]." (*Id.* at 12). "On the one hand, the Court reiterates that Fleetsmarts lacks a Georgia footprint, but on the other notes that Fleetsmarts' declaration omits any reference to whether it derives substantial revenue from Georgia or pays taxes in Georgia, and as noted above, does not specifically deny that it markets to Georgians." (*Id.* at 12-13) (citing Doc. 10-1).

While the Court's prior order did not address what constitutes "substantial revenue," other Georgia courts have held that "less than 1% of total revenue . . . is not sufficient to meet the substantial revenue requirement." *See Sterling Currency Grp. LLC v. Maurer*, No. 1:12-CV-03022-RWS, 2013 WL 4011063, at *7, *11 (N.D. Ga. Aug. 5, 2013) (citing *Sol Melia, SA v. Brown*, 688 S.E.2d 675, 681 (Ga.

Ct. App. 2009); O.C.G.A. § 9–10–91(3)); *compare Hayes v. Irwin*, 541 F. Supp. 397, 420 (N.D. Ga. 1982) ("this court previously found that approximately 30% of the business of [defendant] was derived from the Georgia revocable grantor trusts, thus meeting the statutory requirement of deriving substantial revenue from services rendered in the state."), *aff'd,* 729 F.2d 1466 (11th Cir. 1984).

The record before the Court provides the "missing piece" it found lacking, showing that there cannot be personal jurisdiction over FleetSmarts. As FleetSmarts stated in response to Plaintiffs' discovery requests, "FleetSmarts' informal 'marketing' consist entirely of making outbound phone calls or sending text messages to telephone numbers placed on the U.S. Department of Transportation SAFER website. Such calls and texts are not targeted or restricted to any particular state." (Ex. 1 ¶ 5); (Ex. 2 at 6-7). Moreover, FleetSmarts does not pay taxes in Georgia. (Ex. 1 ¶ 6).

Nor does FleetSmarts derive "substantial revenue" from Georgia, as its revenue from Georgia is less than one percent of FleetSmarts' total revenue. (Ex. 2 at 6); (Ex. 1 ¶ 7); *see Sterling Currency Grp. LLC*, 2013 WL 4011063, at *7, *11. Even with the benefit of three months of jurisdictional discovery, there is insufficient evidence before the Court to establish personal jurisdiction over FleetSmarts under subsections (1) or (3) of Georgia's long-arm statute. To the contrary, FleetSmarts has provided the "missing piece" – regarding taxes,

marketing, and Georgia revenue – to show that jurisdiction is lacking, and

Plaintiff's claim must be dismissed.

**b. Plaintiff cannot state a viable TCPA claim alleging he received calls at a "residential" number when he concedes that he registered that number as a business number with the U.S. Department of Transportation for Plaintiff's trucking company.**

"[T]he National Do Not Call Registry applies to 'residential subscribers' and

does not preclude calls to businesses." *In Re Rules & Regs. Implementing the Tel.*

*Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 9779, 9785 (June 17, 2008).

Consequently, if a plaintiff "holds out such a telephone number to the general

public as a business line, the line should not be considered 'residential' for the

purposes of the TCPA . . . ." *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-

ADB, 2019 WL 957129, at *3 (D. Mass. Feb. 27, 2019) (quoting *Bank v. Indep.*

*Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y.

July 23, 2015)).

That there is a difference between residential and business telephone

numbers is only common sense. *See, e.g., U.S. v. Long*, 797 F.3d 558, 565 (8th Cir.

2015) ("a business owner or operator does not have a reasonable expectation of

privacy in the portions of a business open to the public"); *Lesser v. Espy*, 34 F.3d

1301, 1305 (7th Cir. 1994) (expectation of privacy in commercial property

"different from, and indeed somewhat less than, the privacy expectation in one's

home"). This exact fact was recognized by Congress during the passage of the

TCPA. *See* 137 Cong. Rec. S16205 (Nov. 7, 1991) (statement of Sen. Hollings) (noting that because "[t]he Supreme Court has generally recognized that persons at work do not have the same level of privacy protection as is afforded to persons in their homes," Congress directed the FCC to determine whether to impose any restrictions on calls to business). The Supreme Court similarly has recognized that the TCPA intended to permit "legitimate [commercial] practices" at the same time it sought to protect "the privacy of individuals . . . ." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) (quoting 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). It certainly is a legitimate commercial practice to call a number held out as a business line for business purposes, and calling a business line does not in any way impair the privacy interest of any individual.

The publicly available evidence, available on www.joture.com and on government agency websites in registrations filed by Plaintiff himself, plainly demonstrates that Plaintiff has held out his Number as a business number. Plaintiff registered his Number with the U.S. Department of Transportation for Plaintiff's trucking business, Joture LLC. (Ex. 5 at 1). Plaintiff's Number was also included as the contact number on www.joture.com. (Ex. 7). This Court may take judicial notice of this information in deciding FleetSmarts' motion to dismiss, as this information is from government agency websites and indeed was written by Plaintiff himself. (*See* Ex. 3 (from Georgia Secretary of State)); (Exs. 4-6 (from

U.S. Department of Transportation)); (Ex. 7 (from Plaintiff's own website)); *Stout*, 313 F. Supp. 3d at 1296 n.2; *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *7; *Pohl*, 332 F.R.D. at 716; *S. Ass'n of Colleges & Sch. Comm'n on Colleges, Inc.*, 2022 WL 5241217, at *3 n.2.

Indeed, in response to FleetSmarts' initial motion to dismiss, Plaintiff conceded, "I placed the 252-XXX-XXXX on my website initially and on my Federal Motor Carrier application" for Joture. (Doc. 17-1 ¶ 10). The Court may consider this concession in deciding a motion to dismiss. *Ash*, 2015 WL 12591772, at *5 n.7

Because this Court may take judicial notice of the indisputable evidence that Plaintiff has held out his Number as a business number, not a residential number, including Plaintiff's concession that he placed this number "on my Federal Motor Carrier application" on the U.S. Department of Transportation website, Plaintiff cannot state a claim for violation of the TCPA, and his claim should be dismissed.

### c. In the alternative, the Court should bifurcate discovery to allow resolution of the "narrow, potentially dispositive issue" of whether Plaintiff's number is residential or for a business.

In the alternative, FleetSmarts moves to bifurcate discovery, so that the parties first exchange discovery on the question of whether Plaintiff's telephone number was a residential or commercial number. Bifurcation of discovery is especially appropriate in class-action TCPA cases, which often "involve the

potential 'for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]'" *Newell*, 2020 WL 13568762, at \*2 (quoting *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. CIV. 11-00011, 2013 WL 663301, at \*5 (D.N.J. Feb. 21, 2013)); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at \*4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case, observing that "[i]t is also generally understood that the costs can be particularly 'enormous' for defendants.") (citation omitted).

As Judge Steve C. Jones explained in one opinion granting a TCPA defendant's motion to bifurcate discovery:

> Trials courts have broad discretion in determining whether bifurcation is appropriate. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001). Bifurcation may be appropriate where the "resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary." *Tabor v. New York City*, 11–CV–0195, 2012 WL 603561, at \*10 (E.D.N.Y. Feb. 23, 2012) (Report and Recommendation), *adopted by*, 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012) (bifurcating discovery in the context of a *Monell* claim). This reasoning also applies in the TCPA context. *See, e.g. Leschinsky v. Inter–Continental Hotels Corp.*, No. 8:15–cv–1470–T–30MAP, 2015 WL 6150888, at \*1 (M.D. Fla. Oct. 15, 2015) (granting motion to bifurcate and initially limiting discovery to whether the calls the named plaintiff received were dialed manually and how many calls she received); *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132, 2014 WL 413534, at \*2 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate where "a narrow, potentially dispositive issue exist[ed] concerning whether the faxes sent [were] informational and therefore not actionable under the TCPA," and this issue was "totally distinct from class issues").

*Newell*, 2020 WL 13568762, at *2.

In *Newell*, the defendant moved to bifurcate discovery, requesting to first proceed with "limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives . . . ." *Id.* at *3. Judge Jones granted the defendant's motion, finding that "bifurcating discovery into two phases . . . will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff." *Id.*

This case involves an even narrower issue: whether Plaintiff's telephone number was residential or commercial. Consistent with Judge Jones' opinion in *Newell*, many other courts have bifurcated discovery in TCPA cases, first considering the "narrow, potentially dispositive issue" of whether a plaintiff's telephone number was residential or commercial, before moving on to broader merits discovery. As other courts have held:

- "[L]imited discovery will be allowed to determine whether the phone line that is the subject of this litigation is in fact a residential line for the purposes of § 227(b)(1)(B)."

  *Bank*, 2014 WL 4954618, at *4.

- "[T]he Court hereby limits discovery to questions related to whether the telephone number allegedly contacted by [the defendant] was used as a

'residential' or 'business' line. At the conclusion of this limited discovery,

[the defendant] may file a motion for summary judgment on this issue, and

the Court will determine whether dismissal is appropriate at that time. All

other discovery, including class-based discovery, is stayed."

*Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), ECF No. 49 at 2

(D. Conn. June 30, 2017) (attached hereto as Ex. 9) (citing *Bank*, 2014 WL

4954618, at *2).

- "[T]wo issues are suitable for completion of discovery prior to class

  certification and merits discovery. Those issues are as follows: 1) Whether

  the Plaintiff's telephone number, which is used and advertised as a business,

  may be protected under the TCPA as a residential telephone number; and, 2)

  Whether the calls which Plaintiff alleges were placed to his wireless

  telephone in May of 2016, originated from, or were placed by, Defendant. It

  appears that these issues could be dispositive of one or more of the

  Plaintiff's claims. Discovery limited to these issues should not be time

  consuming and bifurcation of the discovery has a potential to conserve the

  resources of both the parties and the Court."

  *Baker v. Certified Payment Processing, L.P.*, No. 16-CV-03002, ECF No. 22

  at 2-3 (C.D. Ill. Aug. 15, 2016) (attached hereto as Ex. 10).

  As in *Bank*, *Owens*, and *Baker*, limited discovery on the question of whether

Plaintiff's Number is residential would conserve the resources of the parties and the Court, with no significant prejudice to Plaintiff. The court's order in *Owens* provides a clear model for this Court, as this Court may order that, at this time, "the Court hereby limits discovery to questions related to whether the telephone number allegedly contacted by [FleetSmarts] was used as a 'residential' or 'business' line. At the conclusion of this limited discovery, [FleetSmarts] may file a motion for summary judgment on this issue, and the Court will determine whether dismissal is appropriate at that time. All other discovery, including class-based discovery, is stayed." *Owens*, Ex. 9 at 2 (citing *Bank*, 2014 WL 4954618, at *2).

## IV.    Conclusion

Even with the benefit of three months of jurisdictional discovery, there is insufficient evidence before the Court to establish personal jurisdiction over FleetSmarts. Further, Plaintiff's own filings with government agencies, the website for Plaintiff's trucking business, and Plaintiff's own filings in this very case demonstrate that his Number is a business number and thus not covered by the TCPA. Accordingly, Plaintiff's claim should be dismissed. If it is not, the parties should proceed to limited discovery on the narrow, case-dispositive question of whether Plaintiff's Number is residential or commercial.

Date: July 7, 2025                                Respectfully submitted,

MᶜDOWELL HETHERINGTON, LLP

/s/ Jason A. Richardson
Jason A. Richardson*
jason.richardson@mhllp.com
Ryan Goodland*
ryan.goodland@mhllp.com
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

*Admitted *pro hac vice*

Joseph J. Minock
Sinton • Scott • Minock • Kerew
3438 Peachtree Road, Suite 925
Atlanta, GA 30326
GA Bar Number: 863687
*Attorneys for Defendant Blue Water Capital LLC*

## Certificate of Compliance

Under LR 7.1(D) of the Northern District of Georgia, I hereby certify that this document was prepared in Times New Roman font, 14 point under LR 5.1(C).

/s/ Ryan Goodland
Ryan Goodland

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served on July 7, 2025, on all counsel of record by electronic filing.

/s/ Ryan Goodland
Ryan Goodland